**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IRENE MARIE CORYEA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-01210 |
| | ) | Judge Nora Barry Fischer |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

## I.    INTRODUCTION

Plaintiff Irene Marie Coryea ("Plaintiff") brings this action pursuant to 42 U.S.C. § § 405(g) and 1383(c)(3), seeking review of the final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, respectively.  The parties have filed cross motions for summary judgment pursuant to Federal Rule of Civil Procedure 56, and the record has been developed at the administrative level.  For the following reasons, the decision of the Administrative Law Judge ("ALJ") is affirmed.

## II.    PROCEDURAL HISTORY

Plaintiff protectively filed her application for DIB and SSI on October 29, 2003, alleging disability as of September 25, 2003. (R. at 16, 18).  On July 7, 2005, a hearing was held in Franklin, Pennsylvania before an ALJ (R. at 16).  Plaintiff, who was represented by counsel, appeared and testified at the hearing. (R. at 16).  Joseph Kuhar, a vocational expert ("VE"), also testified. (R. at 16).  On November 22, 2005, the ALJ issued a decision in which he determined that Plaintiff was

not "disabled" within the meaning of the Act. (R. at 17, 23-24). The Appeals Council subsequently denied Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner in this case. (R. at 5-7). Plaintiff now seeks review of that decision by this Court.

## III. STATEMENT OF THE FACTS

Plaintiff was fifty years old at the time of the hearing before the ALJ. (R. at 17). She was born on May 13, 1955. (R. at 86, 398). Plaintiff has a bachelor's degree in Human Development and Family Studies from The Pennsylvania State University, and her last employment was as a wraparound worker, working with children who suffer from behavioral and emotional problems. (R. at 17). Previously, Plaintiff had worked as a job coach supervisor, assistant group counselor, and bakery clerk. (R. at 18). Plaintiff alleges that she became disabled on September 25, 2003 as a result of West Nile virus, thyroid problems, osteoarthritis, high blood pressure, rheumatoid arthritis, fibromyalgia, and anxiety. (R. at 18).

### A. Previous Applications

Plaintiff previously filed for DIB and her claim was denied by an ALJ on January 22, 1991. (R. at 16). The Appeals Council denied Plaintiff's request for review on September 24, 1991. (R. at 16). Plaintiff then filed for SSI on December 20, 1991, alleging a disability onset date of May 14, 1988. (R. at 16). The claim was denied on June 11, 1992. (R. at 16). Plaintiff filed again for DIB and SSI on April 24, 1992. (R. at 16). Her applications were denied by an ALJ on November 15, 1993 and by the Appeals Council on May 5, 1994. (R. at 16). On October 29, 2003, Plaintiff again filed for DIB and SSI, bringing the Court to the present appeal. (R. at 16).

**B. Medical Evidence**

Dr. Magdy Iskander, M.D., treated Plaintiff for fibromyalgia[1] and episodic rheumatoid arthritis[2] from 1992 to 2001 and prescribed Plaintiff medication in 2001 for fibromyalgia. (R. at 17, 156-199). The ALJ found that according to Dr. Iskander's records, Plaintiff's fibromyalgia symptoms were stable and Plaintiff's rheumatoid arthritis symptoms required minimal treatment. (R. at 17, citing Exhibit B-1F). During Plaintiff's hospitalization for West Nile virus in September of 2003, Dr. Iskander noted in her consultation that it had been four or five years since she last saw Plaintiff. (R. at 213).

Plaintiff was hospitalized on September 25, 2003 complaining of hearing loss, inability to stand, diffuse weakness, high fever, and respiratory distress. (R. at 204). Consulting doctors noted that her past medical history included hypothyroidism,[3] rheumatoid arthritis, hypertension, chronic

---

[1]

Fibromyalgia is defined as: "a syndrome of chronic pain of musculoskeletal origin but uncertain cause. The American College of Rheumatology has established diagnostic criteria that include pain on both sides of the body, both above and below the waist, as well as in an axial distribution (cervical, thoracic, or lumbar spine or anterior chest); additionally there must be point tenderness in at least 11 of 18 specified sites." Stedman's Medical Dictionary (27th ed. Lippincott Williams & Wilkins 2000), *available at* http://www.stedmans.com/ AtWork/section.cfm/45.

[2]

Rheumatoid arthritis is defined as: "a generalized disease, occurring more often in women, which primarily affects connective tissue; arthritis is the dominant clinical manifestation, involving many joints, especially those of the hands and feet, accompanied by thickening of articular soft tissue, with extension of synovial tissue over articular cartilages, which become eroded; the course is variable but often is chronic and progressive, leading to deformities and disability." Stedman's Medical Dictionary (27th ed. Lippincott Williams & Wilkins 2000), *available at* http://www.stedmans.com/AtWork/section.cfm/45.

[3]

Hypothyroidism is defined as diminished production of thyroid hormone, leading to clinical manifestations of thyroid insufficiency, including low metabolic rate, tendency to weight gain, somnolence and sometimes myxedema. Stedman's Medical Dictionary 841 (Marjory Spraycar, ed., 26th ed. Williams & Wilkins 1995).

smoking and dyspnea on exertion. (R. at 211). Consulting doctors eventually diagnosed Plaintiff with West Nile virus. (R. at 249).

Dr. A. J. Joseph, M.D. has treated Plaintiff as her family doctor since 1997. (R. at 17, 41). On October 10, 2002, Dr. Joseph noted that he wanted Plaintiff to lose weight and "do natural things" before introducing more medication. (R. at 331). Besides her weight problem, Dr. Joseph stated that Plaintiff "seem[ed] to be okay." (R. at 331). On September 15, 2003, Dr. Joseph noted that Plaintiff had complained of back pain but had no physical findings consistent with a back injury. (R. at 324). On October 3, 2003 and October 14, 2003, Dr. Joseph noted that Plaintiff was "doing quite well," that she was recovering from her illness, and that she did not seem to have any residual effects from the West Nile virus. (R. at 320, 322). On October 22, 2003, F.J. Pucharich, M.D., treated Plaintiff for palpable purpura, a rash on her legs. (R. at 318). He prescribed Plaintiff Tylenol No. 3 and Predisone for the Plaintiff. (R. at 318). He noted that Plaintiff had a presumptive positive for West Nile virus, and that Plaintiff stated she would be "okay," if only some of the swelling would abate. (R. at 318).

On October 24, 2003, Dr. Joseph noted that while Plaintiff complained of generalized malaise and fatigue, she looked "fairly good." (R. at 316). He noted that her improvement was sluggish but steady, and he stated, "I'm confident she will fully recover within a very short period of time." (R. at 316).

From November 3, 2003 to June 3, 2004, Dr. Joseph's records show that Plaintiff had no new complaints or problems, except for a mild flare-up of rheumatoid arthritis in November of 2003. (R. at 312, 314, 353, 383). On June 3, 2004, Dr. Joseph diagnosed Plaintiff with H. zoster, shingles, noting that, besides the rash, she had no other complaints or problems. (R. at 382). From July 2,

2004 to January 6, 2005, Dr. Joseph's records show that Plaintiff had no serious complaints or problems and he was "delighted she is doing so well." (R. at 376-381). On January 6, 2005, Dr. Joseph noted that Plaintiff's blood pressure was difficult to control, and on January 21, 2005 noted that Plaintiff had complained of pain and itching on her face. (R. at 374-375).

On March 3, 2005, Dr. Joseph noted that Plaintiff's blood pressure was slightly elevated, but that it had come down when she relaxed. (R. at 373). On March 31, 2005, Dr. Joseph was concerned about Plaintiff's weight gain but was "happy with her overall situation." (R. at 372). On May 2, 2005 and June 3, 2005, Dr. Joseph noted that Plaintiff had no serious complaints or problems. (R. at 392-393). Plaintiff denied chest pain, shortness of breath, PND or othopnea on both occasions. (R. at 392-393). Dr. Joseph noted that Plaintiff was nervous on May 2, 2005 because a family member had undergone surgery. (R. at 393). On June 3, 2005, Dr. Joseph stated, "she has multiple little complaints and problems, but none of them is real serious." (R. at 392).

## C. Administrative Hearing

At the hearing on July 7, 2005, Plaintiff testified that she had "constant" pain "everywhere," and needed to lie down three or four times a day for hours to relieve the pain. (R. at 40-41). Plaintiff testified that she was unable to sit for more than twenty minutes at a time or stand for more than ten minutes at a time. (R. at 43-44). Plaintiff testified that she had difficulty walking 750 feet without assistance, and that she would have to stop several times. (R. at 44). She testified that her rheumatoid arthritis prevented her from performing fine or dexterous movements with her hands, making it difficult for her to use zippers and buttons. (R. at 45-46). She testified that she had difficulty concentrating and remembering things. (R. at 46). She testified that she rarely drives or reads. (R. at 47). She further testified that she watches the news on television and watches her

grandson play when her daughters come to visit.  (R. at 47-48).  Plaintiff stated that she spent four

to six hours a day reclined with her feet propped up, resting from the pain.  (R. at 48-49).

**D. The ALJ's Decision**

In his November 22, 2005 Opinion, the ALJ found Plaintiff not to be disabled under the Act.

(R. at 22-23).  He found Plaintiff's testimony to be not totally credible, given the medical evidence

to the contrary.  (R. at 21-23).  The ALJ found that Plaintiff retained the residual functional capacity[4]

("RFC") to lift, carry, push and pull up to twenty pounds occasionally and ten pounds frequently,

stand and/or walk about six hours in an eight-hour workday, and sit about six hours in an eight-hour

workday.  (R. at 22-23).  He found Plaintiff to be capable of returning to her past relevant work as

a summer youth supervisor, assistant youth counselor, or bakery clerk.  (R. at 22-23).

On February 21, 2006, Dr. Joseph wrote a letter to Plaintiff's attorney detailing her medical

condition.  (R. at 420).  He stated that he had last seen Plaintiff on February 6, 2006.  (R. at 420).

Dr. Joseph stated that Plaintiff's cognitive function had not returned to normal, and that she suffered

from several other medical conditions.  (R. at 420).  He said Plaintiff suffered from encephalitis, or

residual neurologic damage.  (R. at 420).  Dr. Joseph noted that Plaintiff suffered from persistent

ataxia, frequent mood changes, and definite impairment of cognitive function.  (R. at 420).  He stated

that he did not see Plaintiff ever being employable again. (R. at 420).

On March 7, 2006, Plaintiff petitioned the Appeals Council to review the ALJ's decision.

(R. at 407).  Plaintiff claimed the following: 1) the ALJ erred in his credibility determination by not

adequately discussing the credibility issues involved; 2) the ALJ's RFC finding was not supported

---

[4]A Claimant's residual functional capacity is a determination of what the claimant can do
despite his or her limitations.  20 C.F.R. §§ 404.1527(a)(2), 404.1545(a)(1), 416.927(a)(2),
416.945(a)(1).

by substantial evidence; 3) the hypothetical question the ALJ asked did not reflect all of the Claimant's impairments supported by the record; and (4) in reviewing Dr. Joseph's records, the ALJ minimized the Plaintiff's conditions and did not read the record fairly. (R. at 407-408).

On May 16, 2006, Plaintiff reapplied for benefits and was notified that she met the medical criteria for disability. (R. at 409). In granting her application for disability, her onset date was set at December 5, 2005, which corresponds with the date of the ALJ's decision[5]. (R. at 409).

On May 30, 2006, Plaintiff's attorney wrote to the Appeals Council notifying the Council that Plaintiff had reapplied for benefits and had met the medical criteria for disability. (R. at 409). Plaintiff's attorney sent reports from Dr. Mark Goral and Dr. Heather Porter to the Appeals Council. (R. at 409).

Dr. Goral, a clinical psychologist, examined Plaintiff on April 19, 2006. (R. at 410). Dr. Goral noted in his report that Plaintiff had marked or extreme impairment in understanding and carrying out both simple and detailed instructions. (R. at 417). He also noted that Plaintiff had slight or no impairment interacting appropriately with the public, supervisors and co-workers. (R. at 417). Dr. Goral recommended that Plaintiff have a psychiatric consultation "in the near future." (R. at 418).

III.    **STANDARD OF REVIEW**

This Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir.

---

[5]

Plaintiff is now requesting DIB and SSI from the alleged disability onset date of September 25, 2003 to December 5, 2005. The Court has received no further information on this matter.

1994). The Court may not undertake a de novo review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents [her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health and Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); 42 U.S.C. § 423(d)(1). A claimant is considered to be unable to engage in substantial gainful activity "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

To support his ultimate findings, an ALJ must do more than simply state factual conclusions. *Baerga v. Richardson,* 500 F.2d 309, 312-13 (3d Cir. 1974). He must make specific findings of fact. *Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir. 1983). The ALJ must consider all medical

evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its rulemaking authority under 42 U.S.C. § 405(a), has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." [20 C.F.R.] §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. [20 C.F.R.] §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. [20 C.F.R.] §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003)(footnotes omitted).

If it is shown that the claimant is unable to resume previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given plaintiff's mental or physical limitations, age,

education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Campbell*, 461 U.S. at 461; *Stunkard*, 842 F.2d at 59; *Kangas*, 823 F.2d at 777; *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986).

Where the Claimant attempts to rely on evidence that was not presented to the ALJ, the district court may only remand the case if the evidence is new and material, and there is good cause for why the evidence was not previously presented to the ALJ. *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001) (interpreting the sixth sentence of 42 U.S.C. § 405(g)). Once the Appeals Council has denied review of the case, the district court cannot consider this new evidence in its "substantial evidence" review. *Id.*

## IV. DISCUSSION

Employing the five step sequential evaluation pursuant to 20 C.F.R. § 404.1520, the ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (R. at 19). At step two, the ALJ found Plaintiff to be suffering from the following "severe" impairments within the meaning of 20 C.F.R. §§ 404.1520(c) and 416.920(c): history of West Nile virus, rheumatoid arthritis, fibromyalgia, obesity and high blood pressure. (R. at 20, 23). The ALJ found Plaintiff to be suffering from "non-severe" impairments of hearing loss, breathing problems and confusion. (R. at 19). The ALJ also found that Plaintiff's possible depression was non-severe, as it imposed no more than mild functional limitations. (R. at 20). At step three, the ALJ concluded that Plaintiff's impairments, both "severe" and "non-severe," did not meet or medically equal the severity of any of the Listed Impairments enumerated in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations. (R. at 20, 23). Proceeding to step four, pursuant to 20 C.F.R. § 404.1545, the ALJ made the following residual functional capacity assessment: "[t]he

claimant retains the following residual functional capacity: to lift, carry, push and pull up to 20 pounds occasionally and 10 pounds frequently, stand and/or walk about six hours in an 8-hour workday, and sit about six hours in an 8-hour workday." (R. at 22-23). The ALJ also determined that although Plaintiff was unable to return to her past work as a therapeutic staff technician, based upon Plaintiff's RFC, she could return to her past relevant work[6] as a summer youth supervisor, assistant youth counselor, or bakery clerk. (R. at 22-23). Because Plaintiff could return to her past relevant work, the ALJ found that Plaintiff was not under a disability as defined in the Social Security Act in 20 C.F.R. §§ 404.1520(f) and 416.920(f). (R. at 22-23).

In support of her motion for summary judgment, Plaintiff raises the following arguments:1) the ALJ erred in his analysis of the medical evidence, 2) the ALJ wrongly determined that Plaintiff's allegations were not entirely credible, and 3) the ALJ erred in relying upon the VE's testimony. (Docket No. 13 at p. 3). The Court finds that none of Plaintiff's arguments require remand, but will address each argument in turn.

**A.  The ALJ did not err in his analysis of the medical evidence.**

Plaintiff argues that the ALJ incorrectly found that the medical evidence did not support the level of pain to which Plaintiff testified and that the ALJ misconstrued Dr. Iskander and Dr. Joseph's medical records. (Docket No. 13 at p. 14-15). In the Court's view, the ALJ's findings regarding Plaintiff's limitations are supported by substantial evidence.

Plaintiff's argument that the ALJ erred in discounting Plaintiff's testimony as to her

---

[6]

"Past relevant work" is defined at 20 C.F.R. §§ 404.1565 and 416.965 as being work performed within the last 15 years or 15 years prior to the date that disability was established. The work must have lasted long enough for Claimant to learn to perform the job and meet the definition of substantial gainful activity.

subjective level of pain is meritless. Subjective complaints of pain need not be "fully confirmed" by objective medical evidence in order to be afforded significant weight. *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981). While "there must be objective medical evidence of some condition that could reasonably produce pain, there need not be objective evidence of the pain itself." *Green v. Schweiker*, 749 F.2d 1066, 1070-71 (3d Cir. 1984), quoting *Mason v. Shalala,* 994 F.2d 1058, 1067 (3d Cir. 1993). Where a claimant's testimony as to pain is reasonably supported by medical evidence, neither the Commissioner nor the ALJ may discount a claimant's pain without contrary medical evidence. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985); *Chrupcala v. Heckler*, 829 F.2d 1269, 1275-76 (3d Cir. 1987); *Akers v. Callahan,* 997 F. Supp. 648, 658 (W.D. Pa. 1998).

The ALJ found Plaintiff to be suffering from the "severe"[7] impairments of history of West Nile virus, rheumatoid arthritis, fibromyalgia, obesity and high blood pressure. (R. at 20, 23). The ALJ found Plaintiff to be suffering from the "non-severe" impairments of hearing loss, breathing problems, confusion and possible depression. (R. at 19-20). However, at step three, the ALJ

---

[7]

A "severe" impairment is an impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). Basic work activities constitute the abilities and aptitudes necessary to do most jobs, such as:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

20 C.F.R. §419.920(c).

concluded that Plaintiff's "severe" and "non-severe" impairments considered alone and/or in combination did not meet or medically equal any of the impairments presumed severe enough to render a person disabled. (R. at 20, 23).

In the instant case, the record does not support Plaintiff's subjective testimony of debilitating pain. Office notes from Plaintiff's treating physicians constitute contrary medical evidence, indicating that although Plaintiff suffers from fibromyalgia and rheumatoid arthritis, those conditions are stable with medication. (R. at 21). The ALJ acknowledged in his opinion that Plaintiff likely suffers from some pain, caused by both her medical conditions and by aging and obesity. (R. at 21). However, the ALJ correctly pointed out that the existence of some pain is not sufficient to render one disabled and unable to work. (R. at 21). The ALJ took Plaintiff's limitations regarding pain caused by increased physical activity into account when he determined that Plaintiff would only be able to function at the "light work" level, rejecting the "heavy" and "medium" exertional levels. (R. at 21). The ALJ found that Plaintiff's "severe" and "non-severe" impairments together with some pain, without more, were not sufficient to meet or medically equal any of the impairments deemed severe enough to render a person disabled. (R. at 20, 23).

In his analysis, the ALJ referenced the contrary medical reports of Dr. Joseph and Dr. Iskander. *Id.* Reviewing the same, this Court finds that there is substantial evidence in the record to support the ALJ's finding that Plaintiff's subjective testimony of debilitating pain should be discredited.

Further, Plaintiff's allegations that the ALJ minimized or misconstrued the medical records from Dr. Iskander or Dr. Joseph are unwarranted. As to the former, the ALJ (in his Opinion) referred to Dr. Iskander's office notes, reflecting a treatment period from 1997 to 2001. (R. at 17). The ALJ

also refers to Dr. Iskander's consultation at Sharon Regional Health Systems when Plaintiff was hospitalized with West Nile virus in 2003. (R. at 17). As to the latter, the ALJ (again in his Opinion) repeatedly cited to Dr. Joseph's medical notes from the period of September 15, 2003 to June of 2005. (R. at 17-18). The ALJ's statements concerning Plaintiff's condition, including that Plaintiff's physical examinations were unremarkable and that her little complaints were not serious, were quotations taken directly from Dr. Joseph's office notes. (R. at 19-21) (citing Exhibits B-9F/9 and B-10/F/2). The ALJ directly quotes portions of Dr. Joseph's office notes over a 2 year period, demonstrating that Plaintiff's illnesses were stable and under control with medication. (R. at 19-22). The ALJ also cited to the State agency reviewing physician's report, who similarly concluded that Plaintiff could perform the full range of light work activity. (R. at 22) (citing Exhibit B-5F). The ALJ does not consult Dr. Joseph's letter written February 21, 2006. This is proper because Dr. Joseph wrote the letter after the hearing had already occurred on November 22, 2005. Substantial evidence shows that the ALJ accurately construed the medical evidence in the record.

Neither Dr. Joseph's letter dated February 21, 2006 nor Dr. Goral's report dated April 19, 2006 can be used by Plaintiff to criticize the ALJ's analysis of her claims. Evidence not presented to the ALJ may not be used to argue that the ALJ's decision was not supported by substantial evidence, and the district court may only remand the case if the evidence is new and material, and if there is good cause for why the evidence was not previously presented to the ALJ. *Matthews*, 239 F.3d at 593-595. Evidence is "new" if it was not in existence or available to the Claimant at the time of the administrative proceeding. *Sullivan v. Finklestein*, 496 U.S. 617, 626 (1990); *Szubak v. Secretary of Health and Human Services*, 745 F.2d 831, 833 (3d Cir. 1984). Evidence is "material" if it is relevant, probative, and there is a reasonable possibility it would have altered the outcome of

the Commissioner's determination. *Id.* The Claimant must show "good reason" for why the evidence was not previously brought before the ALJ. *Matthews*, 239 F.3d at 595. A claimant must satisfy all three requirements (new, material and good cause) in order to justify a remand. *See Szubak*, 745 F.2d at 833.

Here, Dr. Joseph's letter was written on February 21, 2006, after the ALJ's opinion was handed down on November 22, 2005. Dr. Joseph's letter is not considered "new" evidence under *Szubak* because *Szubak* requires the evidence be unavailable to the claimant at the time of the proceeding. *Szubak*, 745 F.2d at 833. There is no reason why Dr. Joseph's opinion would only have become available to Plaintiff on February 21, 2006 and not prior to the ALJ's decision on November 22, 2005. Dr. Joseph was Plaintiff's family physician for over eight years and saw Plaintiff at least once a month leading up to the date of the ALJ's decision. (R. at 17, 41, 312-393). This case is distinguishable from *Szubak*, where the claimant sought medical reports from five different doctors after the ALJ's decision. *Szubak*, 745 F.2d at 833. However, the Plaintiff has not demonstrated any reason, let alone "good reason" or "good cause," to show why Dr. Joseph had not written the letter prior to the ALJ's decision on November 22, 2005. This case is similar to *Matthews v. Apfel*, where the United States Court of Appeals for the Third Circuit similarly held that the claimant failed to show good cause for not presenting the evidence in question prior to the ALJ's decision. *Matthews*, 239 F.3d at 595. In *Matthews*, Ms. Matthews applied for DIB and the ALJ denied her claim. *Id.* at 590. Ms. Matthews requested the Appeals Council review her claim, and submitted a two-page letter and supporting documents from a vocational expert, who stated Ms. Matthews lacked all requisite skills to perform in the national economy. *Id.* at 591. The United States Court of Appeals for the Third Circuit held that although the letter from the vocational expert was new and material, Ms.

Matthews had not explained why she sought the letter after the ALJ's decision was released. *Id.* at 595. Likewise, Dr. Joseph's letter dated February 21, 2006 cannot be used by this Court when determining whether the ALJ's decision was supported by substantial evidence.

In the same manner, Dr. Goral's report dated April 19, 2006 cannot be evaluated by this Court. Dr. Goral's report may be considered "new" under *Szubak* because it was unavailable to Plaintiff at the time of her hearing. *Szubak*, 745 F.2d at 833. Because Dr. Goral had not examined Plaintiff prior to the ALJ's decision on November 22, 2005, Dr. Goral's report did not exist prior to November 22, 2005 and was therefore unavailable to Plaintiff. However, Dr. Goral's report is not "material" because it is not relevant. *See Szubak*, 745 F.2d at 833. Dr. Goral performed a psychological evaluation of Plaintiff and reported her mental condition as of April 19, 2006. (R. at 410-419). Plaintiff is currently asking for DIB and SSI to be awarded from the time period of September 25, 2003 to December 5, 2005, which was not the subject of Dr. Goral's report. Also, Dr. Goral's report is not relevant because in applying for DIB and SSI, Plaintiff did not allege or testify to any mental health condition that would constitute a disabling impairment under the Act. Plaintiff briefly mentioned possible mild depressive symptoms, which Dr. Joseph attributed to external factors such as weight gain, her husband's job, and the illness of a family member. (R. at 19-20). Therefore, because Dr. Goral's report is not material, it cannot be used by this Court to determine whether the ALJ's decision was supported by substantial evidence.

**B.**    **Substantial evidence supports the ALJ's finding that Plaintiff's subjective complaints were not fully credible.**

Plaintiff next argues that the ALJ erred in his determination that Plaintiff's statements

concerning the intensity, duration, and limiting effects of her symptoms[8] were not entirely credible. (Docket No. 13 at p. 3). Plaintiff argues that the ALJ failed to properly evaluate her subjective complaints and did not provide a sufficient rationale for finding that her statements were not entirely credible. (Docket No. 13 at p. 9-10).

Credibility determinations pertaining to a claimant's testimony regarding her pain and limitations fall within the ALJ's province. *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983). After the ALJ has determined that a medical impairment exists that could reasonably cause Plaintiff's alleged symptoms, the ALJ must "evaluate the intensity and persistence of the pain" and the extent to which Plaintiff "is accurately stating the degree of pain or the extent to which he or she is disabled by it." *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999). A credibility determination made by the ALJ is entitled to great deference by the district court. *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003). However, this determination must "contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7; see also *Lang v. Barnhart*, No.Civ.A.05-1497, 2006 WL 3858579, at *10 (W.D. Pa. Dec. 6, 2006). Where a claimant's testimony is reasonably supported by medical evidence, the finder of fact may not discount the testimony without contrary medical evidence. *Williams v. Sullivan*, 970 F.2d 1178, 1184-85 (3d Cir.

---

[8]

The Court notes that applicable law recognizes "a distinction between the issue of the existence of a medical condition and the issue of the existence of a statutory disability." *Kuzmin v. Schweiker,* 714 F.2d 1233, 1237 (3d Cir. 1983). In the instant case, it is clear throughout his Opinion that the ALJ did not doubt that Plaintiff had a medical condition, but the question the ALJ considered was whether that condition was disabling.

1992).

In the instant case, when comparing the Plaintiff's testimony with the objective medical evidence, the ALJ found that while her medically determinable impairments could reasonably be expected to produce the alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible and were inconsistent with the totality of the evidence. (R. at 21). The ALJ chose not to credit Plaintiff's complaints of disabling pain and severe limitations for multiple reasons listed in his opinion, including: (1) these allegations were inconsistent with Plaintiff's medical records,[9] (R. at 21); (2) Plaintiff was never hospitalized or treated by a specialist after she was released from her hospitalization for West Nile virus on October 2, 2003, (R. at 21); (3) Plaintiff's blood pressure has generally been controlled by medication and Plaintiff has consistently denied any chest pain, PND, shortness of breath or orthopnea, (R. at 21); (4) Dr. Joseph's medical records do not reflect any complaints by Plaintiff about trouble concentrating or remembering to the degree that she seldom drives or uses an oven, which Plaintiff alleged during the ALJ's hearing, (R. at 21); and (5) Plaintiff never consulted a mental health professional for assistance coping with pain or her alleged concentration handicaps. (R. at 21). These reasons, as explained by the ALJ in the body of his opinion, constitute substantial evidence that Plaintiff's subjective complaints were not fully credible.

Under the applicable regulations, a plaintiff's daily activities are a valid factor to be

---

[9]

For example, the ALJ referenced Dr. Iskander's medical notes indicating Plaintiff's fibromyalgia is stable with medication and Plaintiff's rheumatoid arthritis is mild. (R. at 21). Also, the ALJ cited Dr. Joseph's medical notes stating Plaintiff's "physical examinations were essentially unremarkable" and the ALJ cited to the numerous times Dr. Joseph noted that Plaintiff's "multiple little complaints and problems are not 'real serious.'" (R. at 21).

considered by the ALJ when conducting an inquiry as to the reliability of the claimant's subjective complaints. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Inconsistencies in a claimant's testimony or daily activities permit an ALJ to conclude that some or all of the claimant's testimony about her limitations or symptoms is not fully credible. *See Burns v. Barnhart*, 312 F.3d 113, 129-130 (3d Cir. 2002). Even "limitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible - the ALJ can choose to credit portions of the existing evidence." *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005).

The ALJ determined that Plaintiff's previously self-reported daily living activities were inconsistent with the limitations she alleged in her testimony at the hearing before the ALJ. (R. at 21). The ALJ cited Plaintiff's responses to a questionnaire administered one month after she was diagnosed with West Nile virus. (R. at 21). The ALJ noted that Plaintiff reported that she occasionally does the dishes, dusts, and grocery shops. (R. at 21). Plaintiff also reported in the questionnaire that she reads, works crossword puzzles, and watches television. (R. at 21). Plaintiff reported in the questionnaire that she did not use an assistive device to walk, contradicting her testimony at the ALJ hearing that she must use a cane. (R. at 17, 21). Moreover, no treating or examining medical source reported any limitations as to Plaintiff's activities of daily living. (R. at 21). Such evidence further bolsters the ALJ's credibility determination.

Finally, Plaintiff argues that the ALJ erred by failing to provide an adequate explanation for why he did not give Plaintiff's subjective complaints full credit. (Docket No. 13 at p. 9-10). Plaintiff argues that the ALJ provided only "conclusory statements" instead of a thorough explanation of how he evaluated Plaintiff's testimony. (Docket No. 13 at p. 10). Here, the ALJ's determination of Plaintiff's credibility contains specific reasons for this finding, which are supported

by the evidence in the case record. The ALJ provides thorough analysis, taking into account Plaintiff's daily activities and medical records provided by Dr. Joseph, Dr. Iskander, and Sharon Regional Health Systems. (R. at 17-22). The ALJ cited and explained why this evidence is inconsistent with a finding of debilitating pain preventing the Plaintiff from returning to her past work. (R. at 17-22). There is no indication in the record that the ALJ failed to consider Plaintiff's subjective complaints, despite not being fully confirmed by the medical evidence. The ALJ's opinion sufficiently explained why he found Plaintiff's testimony to be not fully credible. After reviewing the ALJ's analysis against the record, the Court finds that the ALJ did not err in his credibility determination because his determination is supported by substantial evidence.

   **C.    Substantial evidence supports the ALJ's decision that Plaintiff was capable of performing her past relevant work.**

   The Plaintiff's final argument centers around the ALJ's assessment of Plaintiff's RFC and the question posed at Plaintiff's hearing to a VE based on this assessment. (Docket No. 13 at p. 13-14). As noted above, the ALJ made the following RFC assessment:"[t]he claimant retains the following residual functional capacity: to lift, carry, push and pull up to 20 pounds occasionally and 10 pounds frequently, stand and/or walk about six hours in an 8-hour workday, and sit about six hours in an 8-hour workday." (R. at 22-23). Based on this assessment, the ALJ asked the VE to assume the following hypothetical: "I'd like you to assume the age is 50, college education and I'd like you to also hypothetically assume [INAUDIBLE] testimony. Being that's the case, sir, would that allow the jobs of the past or – and/or less strenuous jobs that exist in the national economy?" (R. at 51). Based on this question, the VE testified that there were no jobs that exist in significant numbers in the national economy that the Plaintiff can perform. (R. at 51). The ALJ then asked the

VE to list examples of light jobs with a sit/stand option. (R. at 51-52).

The ALJ is not required to seek the testimony of a VE at step four. *Mullin v. Apfel*, 79 F. Supp. 2d 544, 549 (E.D.Pa. 2000), aff'd 254 F.3d 1078 (3d Cir. 2001). At step four, the Plaintiff bears the burden of proving she cannot return to her past relevant work. *Id.*; *See e.g.* 20 C.F.R. § 404.1566; *Banks v. Massanari*, 258 F.3d 820 (8th Cir. 2001) (holding that vocational expert testimony is not required until step five of the sequential analysis). Although vocational expert testimony is not needed at step four, it may be considered when the ALJ. is determining whether the claimant is capable of performing past relevant work as it is performed in the national economy. *Rivera v. Barnhart*, 239 F.Supp. 2d 413, 421 n.3 (D. Del. 2002) (citing *Townsend v. Chater*, 91 F.3d 160, 1996 WL 366207, *3 (10th Cir. 1996)).

Plaintiff first argues that the RFC assessment is not supported by substantial evidence. (Docket No. 13 at p. 14). This argument relies upon a finding that the ALJ erred by misconstruing Dr. Joseph and Dr. Iskander's medical reports and erred by finding that Plaintiff's testimony was not entirely credible. This Court previously found that such arguments fail.

Plaintiff next argues that the ALJ erred (1) when presenting the above stated hypothetical question to the VE who testified at Plaintiff's hearing and (2) when stating that the VE testified that Plaintiff could return to her past relevant work. (Docket No. 13 at p. 13). The Court also finds these arguments to be without merit.

The ALJ was not required to present the hypothetical question to the VE. Because the ALJ was at step four in the sequential analysis, he alone as the trier of fact had to assess the Plaintiff's RFC. *Rivera*, 239 F.Supp. 2d at 420. A claimant will be found capable of performing her past relevant work if she can 1) perform the job as she actually performed it, or 2) perform the job as it

is generally performed in the national economy. Social Security Ruling 82-61, 1982 WL 31387 (1982). The ALJ alone determines whether the claimant can return to her past relevant work as she actually performed it. *Rivera*, 239 F.Supp. 2d at 420-421. Here, the ALJ determined that Plaintiff retained the RFC to perform the "full range of light work." (R. at 22-23). The ALJ also decided that based upon Plaintiff's own testimony of her past work, she was capable of performing her past relevant work. (R. at 22). Plaintiff worked as a bakery clerk from April to September of 1996, as an assistant youth counselor from June to August of 1999 and June to August of 2000, and as a summer youth supervisor from July to August of 2001. (R. at 107, 134). Plaintiff described the physical demands of these positions and her responsibilities in a questionnaire. (R. at 137-140). Plaintiff performed each of these jobs within fifteen years of applying for DIB and SSI in October of 2003. (R. at 134). There is no evidence in the record to indicate Plaintiff did not learn to perform these jobs successfully. It was not necessary for the ALJ to consult the VE at step four, and the ALJ's own findings affirm the judgment.

Although unnecessary, the ALJ did consult the VE at the hearing but the ALJ did not ask the VE to assume a hypothetical person with the RFC to perform the full range of light work. (R. at 51). Based upon the VE's responses to the ALJ's hypothetical question, the ALJ asked the VE to assume a hypothetical person with all the limitations Plaintiff alleged in her subjective testimony during the hearing. (R. at 51). This is evidenced by the VE's references to limitations in fine finger dexterity and sit/stand options. (R. at 51). Because the ALJ found at step four of the process that the record showed Plaintiff retained the RFC to perform the full range of light work and the ALJ ultimately discredited part of Plaintiff's testimony, the VE's response to the hypothetical question is irrelevant. Although the ALJ incorrectly stated that the VE testified that based upon Plaintiff's RFC Plaintiff

could return to her past relevant work, the ALJ's own findings affirm the judgment.

The ALJ's decision is supported by substantial evidence based upon his own findings, regardless of whether the hypothetical question was correctly phrased or whether the VE actually testified that Plaintiff could return to her past relevant work. Based on Plaintiff's statements from the questionnaire, the VE correctly classified Plaintiff's past work as a bakery clerk as light and unskilled as actually performed; as an assistant youth counselor as light and semiskilled as actually performed, and as a summer youth supervisor as light and semiskilled as actually performed. (R. at 49-50, 137-140). Because these past jobs fall within Plaintiff's RFC of "full range of light work," substantial evidence supports the ALJ's decision that Plaintiff was able to return to her past relevant work as she actually performed it and therefore was not disabled under the Act.

## V.       CONCLUSION

Based upon the evidence of record, the parties' cross motions and briefs outlining their arguments, and the supporting documents filed in support and in opposition thereto, this Court concludes that substantial evidence supports the ALJ's findings that Plaintiff was not statutorily disabled as of September 25, 2003. The decision of the ALJ denying Plaintiff's application for social security income and disability insurance benefits for that period of time is affirmed. An appropriate order follows.

*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge


Date:   September 16, 2008

cc:      All counsel of record.

23